IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DERRICK BILLUPS,               )
       Plaintiff,         )
                           )   No. 1:07-CV-00062-CKJ
vs.                            )
                           )   **ORDER**
A. RAMIREZ, et al.,            )
       Defendants.        )
                           )

Pending before the Court is Defendants' Motion for Summary Judgment [Doc. # 44]. Plaintiff has filed a Response and Defendants have filed a Reply.

*Factual and Procedural Background*

On May 16, 1994, Plaintiff Derrick Billups ("Billups") was placed in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and was incarcerated at Sierra Conservation Center ("SCC").[1] Billups had asthma, was enrolled in the mental

---

[1] Defendants assert Billups was convicted of first degree murder, second degree robbery, and two counts of vehicle theft, and was sentenced to a prison term. Billups asserts in his Statement of Facts that his criminal conviction has no bearing on the civil case. While the nature of Billups' convictions may be relevant to a consideration of deference afforded to prison administrators to ensure internal order and discipline and to maintain institutional security, Defendants have not shown they were aware of the nature of the Billups's convictions at the time of the incident. The Court will not consider the nature of Billups's convictions.

health program, had impaired mobility (he wore a mobility impaired inmate bright yellow vest), walked with a cane, and wore eyeglasses.

On April 14, 2005, at approximately 8:15 p.m., Billups and inmate Davis were involved in a mutual combat fight at SCC, in Tuolumne Unit, Building 4.[2] In his declaration, Building Four Correctional Officer Hiller ("Hiller") asserts that, upon observing the fight, he activated his Personal Alarm Device. The declaration of Plaintiff's witness "Qiyam" L. Pogue ("Pogue") corroborates this. Defendants assert that, when an alarm is sounded, inmates are supposed to get down on the ground in a prone position. Defendants assert, and Billups does not dispute, that Billups and Davis did not comply with the alarm activation. Defendants further assert that Hiller and Building Four Correctional Officer Greenly ("Greenly") responded to the scene and gave several verbal orders for the inmates to get down and stop fighting; Billups and Davis did not comply with the verbal orders of the officers and continued fighting. Billups does not dispute these assertions. Similarly, the declaration of Pogue does not assert that no verbal orders were given.

Hiller states in his declaration that he discharged his O.C. Pepper Spray on both inmates for purposes of stopping the fight, with no effect. At this time, Billups was on top of Davis. Defendants further assert Hiller and Greenly drew their Side Handle Batons and struck inmate Billups in the right upper arm and right thigh, with no effect. *See* Defendants' Separate Statement of Facts ("Defendants' SOF"), Exs. B and F. Corrections/Recreational Officer Ramirez ("Ramirez") states in his declaration that he then responded to the scene and gave another order for the inmates to get down and stop fighting; Billups and Davis continued to fight. Ramirez states that he drew his O.C. Pepper Spray and sprayed both inmates in the upper facial area, with negative results.[3] Further, Ramirez drew his Side

---

[2]Billups does not refer to the incident as a mutual combat fight. He states that Davis started hitting Billups in the face and that Billups and Davis ended up on the floor with Billups attempting to stop Davis from continuing to hit Billups in the face.

[3]Billups's Statement of Facts indicates that three cans of O.C. Pepper Spray were used and two of the cans were emptied. However, his Ex. D does not establish this fact.

- 2 -

Handle Baton and struck inmate Billups in the lower back area with both a forward power spin and a reverse power spin, resulting in no cooperation. Correctional Sergeant Collier ("Collier") states in his declaration that he then arrived on the scene; he observed Greenly, Hiller, and Ramirez trying to stop Billups and Davis from fighting. Collier heard the officers yelling to both inmates to "[g]et down" and to "[s]top fighting[.]" Defendants' SOF, Ex. D. Collier further observed the other officers use their state issued MK-9 Pepper Spray and Side Handles Batons. Collier states that he ordered the correctional officers to discontinue the use of the Side Handle Batons as it did not appear to be effective. Collier then physically grabbed Davis, pulled him out of the fight, and placed him into restraints. Further, Ramirez states in his declaration that he then physically grabbed Billups, placed him on the floor, and placed him into restraints.

Billups does not specifically dispute these assertions, but describes the incident as follows:

> The defendant's (sic) started beating Plaintiff over the entire body with PR-24 batons, and defendant Greenly started spraying Plaintiff with her O.C. Pepper Spray. Then defendant Ramirez entered and started hitting Plaintiff with his baton and hit Plaintiff in the face under the left eye.
>
> Defendant Ramirez dispensed his entire can of MK 9 O.C. Pepper Spray in Plaintiff's face and eyes. Defendant Hiller dispensed his entire MK 9 O.C. can of Pepper Spray in Plaintiff's face and eye's (sic), and continued to beat Plaintiff with his baton over Plaintiff's entire body.
>
> Defendant Collier help (sic) hold Plaintiff['s] arms with Defendant Hiller as inmate Davis hit and kicked Plaintiff in the mouth area with hard soled state issued boots. [Citation omitted.] Defendants beat Plaintiff with batons until Plaintiff was unconscious bleeding lying on the dayroom floor.

Opposition, pp. 7-8; *see also* Complaint, pp. 8-9.

Defendants assert that Ramirez escorted Billups to the Tuolumne Medical Clinic for decontamination and a medical evaluation. Defendants assert that Billups was evaluated by SCC medical staff on April 14, 2005, at approximately 8:35 p.m. The Medical Report of Injury or Unusual Occurrence, or CDC Form 7219 ("Medical Report") indicates that when asked to give a brief statement of the circumstances of the injury or unusual occurrence, Billups stated, "I guess so" and acknowledged that a disagreement occurred. Defendants'

SOF, Declaration of Gatling, Attachment 2. The Medical Report indicates that Billups was cleared to return to custody.

Defendants further assert that, on April 14, 2005, at 9:15 p.m., Billups was again seen and evaluated by SCC medical staff. The Interdisciplinary Progress Note ("Progress Note") from that evaluation indicates no reported loss of consciousness, and that, at the time of the assessment, Billups did not demonstrate any active bleeding, respiratory difficulties, nasal swelling, or bone deformities, and that Billups was able to move all of his extremities well. The Progress Note also indicates that Billups was able to bend his knees and lower himself to the ground past ninety-degrees without assistance and maintained good balance without wobbling. The Progress Note also indicates that there was no acute distress noted and Billups was returned to custody.

Billups asserts in his Statement of Facts that he was placed in Administration Ad-Seg lock up and did not receive any medical attention at or on April 14, 2005, or at 9:15 p.m. on April 14, 2005. Billups's Statement of Facts, p. 7. However, in his Opposition, Billups asserts that, "[w]hile at the medical station after the incident," Opposition, p. 9, he did not receive adequate medical care. Billups then asserts in his Opposition that any treatment was denied. The Court notes that the Medical Report includes the notation, "In front of Clinic[.]" Defendants' SOF, Declaration of Gatling, Attachment 2.

Defendants authored a CDC 837 Crime/Incident Report, detailing their involvement and observations during the incident between Billups and Davis.

Defendants assert that, on April 20, 2005, Billups received a Rules Violation Report for the specific act of Mutual Combat. Billups pleaded guilty to the charge against him. As a result of the rules violation, Billups received 90 days forfeiture of credits. Billups does not dispute this assertion.

Defendants assert that, on April 27, 2005, Billups was taken to Tuolumne General Hospital's emergency room because he collapsed inside his cell and was non-responsive. Dr. Choo S. Lee ("Dr. Lee") medically evaluated Billups and documented his findings on an Admission History and Physical ("Physical"), dated April 27, 2005. The physical notes that

- 4 -

Billups "claims that he was assaulted by three guards on the 14th of this month and he was hit by batons over the back of the head, neck and the back of his trunk." Defendants' Statement of Facts, 37. Dr. Lee noted in the Physical that Billups's general condition was satisfactory, he was not in acute distress, and that, although Billups complained of tenderness over the back of his neck and down to the lower back, Dr. Lee "did not see any definite bruises, though [Billups] claims that he is bruising over his back, and he claims to have bruises over both ankles." *Id*. The Physical includes Dr. Lee's overall impression of Billups's condition that there was a "fictitious loss of consciousness" and recommended discharge of Billups to SCC.

Billups has submitted medical records which purport to show minimal right knee effusion, minimal effusion at the radio humeral joint (elbow), ordered facial x-rays that were not completed, that Billups's eyes are now photosensitive and Billups now has decreased vision, and medical records that show Billups had a prior serious low back injury before the incident and was receiving treatment at the time of the incident. Defendants object to these exhibits.

Dr. Douglass, the Chief Physician and Surgeon at Avenal State Prison, states in his declaration that he was asked to review Billups's medical files and address his claims from a medical perspective; he asserts he has conducted a diligent and thorough review of Billups's medical files. In his medical opinion and experience, if an inmate was repeatedly hit with a Side Handle Baton over his entire body, including his facial area, to the point where he was knocked unconscious, he would likely complain of acute pain, and likely be unable to move his extremities well, bend his knees and lower himself to the ground past ninety-degrees without assistance, or maintain good balance without wobbling. In Dr. Douglass's medical opinion and experience, the injuries suffered by Billups on April 14, 2005, consisting of an abrasion/scratch to his chin and bleeding from his nose, were more consistent with being in a fist fight than being repeatedly hit with Side Handle Batons. Further, in his medical opinion and experience, an individual who was beaten with batons over his entire body until he was knocked unconscious would likely retain residual bruising

on his body for as long as three weeks. Additionally, in Dr. Douglass's medical opinion and experience, inmates who have been exposed to O.C. Pepper Spray do not suffer any long-term detrimental effects, such as decreased eye acuity or vision, increased difficulty reading, or extreme sensitiveness to sunlight. Billups asserts that Dr. Douglass's notes do not include all of his medical records. Billups has submitted those documents as exhibits; Defendants have filed objections to those exhibits.

On January 12, 2007, Billups filed a civil rights complaint under 42 U.S.C. § 1983 against Ramirez, Seabold, Hiller, and Collier. On May 7, 2007, the court determined that Billups had stated a claim for relief under section 1983 against Ramirez, Seabold, Hiller, and Collier.

Following the submission of a stipulation by the parties, the court dismissed Seabold from this case. Subsequently, the court granted Billups leave to amend his complaint; on June 26, 2008, he amended his complaint to add Greenly as a defendant.

On January 27, 2009, Defendants filed a Motion for Summary Judgment. Billups has filed an Opposition.[4] In his Opposition, Billups asserts that Defendants have failed to comply with L.R. 56-1. Defendants have filed a Reply and Objections to Evidence Proffered by Billups.

*Compliance with Local Rules*

Billups asserts that Defendants have failed to comply with L.R. 56-1 by failing to serve and lodge a statement of uncontroverted facts and conclusions of law.[5] Billups points to footnote 1 of Defendants' Separate Statement of Facts which states that Defendants do not stipulate to the facts in the event that this matter proceeds to trial. Defendants' failure to

---

[4]Included in his Opposition are arguments related to the adequacy of medical care. Such claims are not pending before the Court in this case.

[5]The Court notes that L.R. 56-260 addresses the requirement of a statement of undisputed facts to accompany a motion for summary judgment.

- 6 -

stipulate to the facts is only an indication that they do not wish to present a case of written statements rather than presenting live testimony. Further, L.R. 56-260(c) permits the parties to stipulate to facts "only for the purpose of a motion for summary judgment" and to not be otherwise binding. The Court finds Defendants have adequately complied with L.R. 56-260.

*Summary Judgment Legal Standard*

Summary judgment may be granted if the movant shows "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c), Federal Rules of Civil Procedure. The moving party has the initial responsibility of informing the court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has met the initial burden, the opposing party must "go beyond the pleadings" and "set forth specific facts showing that there is a genuine [material] issue for trial." *Id.*, 477 U.S. at 248, 106 S.Ct. at 2510, internal quotes omitted. The nonmoving party must demonstrate a dispute "over facts that might affect the outcome of the suit under the governing law" to preclude entry of summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Further, the disputed facts must be material. *Celotex Corp.*, 477 U.S. at 322-23. In opposing summary judgment, a plaintiff is not entitled to rely on the allegations of his complaint, Fed.R.Civ.P. 56(e), or upon conclusory allegations in affidavits. *Cusson-Cobb v. O'Lessker*, 953 F.2d 1079, 1081 (7th Cir. 1992). Further, "a party cannot manufacture a genuine issue of material fact merely by making assertions in its legal memoranda." *S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines) v. Walter Kiddle & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1982).

The dispute over material facts must be genuine. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* A party opposing a

properly supported summary judgment motion must set forth specific facts demonstrating a genuine issue for trial. *Id.* Mere allegation and speculation are not sufficient to create a factual dispute for purposes of summary judgment. *Witherow v. Paff*, 52 F.3d 264, 266 (9th Cir. 1995) (per curiam). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50, 106 S. Ct. at 2511. However, the evidence of the nonmoving party is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* at 255. Further, in seeking to establish the existence of a factual dispute, the non-moving party need not establish a material issue of fact conclusively in his favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d 626, 631 (9th Cir. 1987).

Additionally, the Court is only to consider admissible evidence. *Moran v. Selig*, 447 F.3d 748, 759-60 (9th Cir. 2006) (pleading and opposition must be verified to constitute opposing affidavits); *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1991) (declarations and other evidence that would not be admissible may be stricken).

*Objections to Evidence Proffered by Billups*

Defendants have objected to evidence proffered by Billups. A "genuine" issue of "material" fact cannot be created by a party simply making assertions in his legal memoranda. *See Varig Airlines*. Declarations and other evidence that would not be admissible may be stricken. *FDIC v. New Hampshire Ins. Co.*, 953 F.2d 478, 484 (9th Cir. 1991). Indeed, a "conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *Nilsson v. City of Mesa*, 503 F.3d 947, 952 n. 2 (9th Cir. 2007). Moreover, statements must allege personal knowledge. *See Skillsky v. Lucky Stores, Inc.*, 893 F.2d 1088, 1091 (9th Cir. 1990) ("Like affidavits, deposition testimony that is not based on personal knowledge and is hearsay is inadmissible and cannot raise a genuine issue of material fact sufficient to withstand summary judgment.").

Defendants' first objection is to specified statements included in the declaration of Anthony Smith ("Smith") as not relevant because there is no cause of action for First Amendment retaliation in this case. The statements indicate that Smith observed correctional officers retaliate against Billups and observed Correction Officer Douglas threaten Billups. The Court agrees that the statements are not relevant. There is no First Amendment retaliation claim in this case and the statements do not allege any "other act" conduct by the Defendants in this case. *See* Fed.R.Evid. 404. Moreover, the statements are conclusory, i.e., Smith has not set forth what conduct he found to constitute retaliation or threats.

Defendants' second objection is to specified statements in Billups' declaration. As to Billups's statement regarding Davis' mental capacity and violent nature, the Court agrees that the statement is not relevant, lacks proper foundation, constitutes improper lay opinion, and that Billups is not qualified to make such an opinion. Fed.R.Evid. 401-102, 602, 701-702. As to Billups's statement that he was not given immediate medical treatment, the Court finds this statement is relevant to Billups's first-hand perception of the events. However, this statement is not relevant and the additional statements as to the adequacy of the medical treatment are not relevant to this case because there is no deliberate indifference to medical treatment claim pending in this case. Further, Billups is not qualified to give the statements as to the adequacy of medical treatment. The Court also agrees with Defendants that Billups's statement that the physical assault constituted deliberate indifference is conclusory. As to Billups's statement regarding retaliation and confiscation of property, the Court agrees with Defendants that the statements are not relevant.

In Defendants' third objection, Defendants assert that the declaration of Shutka Wells ("Wells") is not relevant and is improper character evidence. Wells's statements are not regarding the incident at issue in this case. Further, Wells's statements are vague and conclusory. The Court agrees with Defendants that Wells's statements are not relevant.

Defendants' fourth objection is to Billups's Exhibits 5-7 and 12 on the grounds that they lack foundation, contain inadmissible hearsay, and are unauthenticated. Although the Court agrees that the documents are not authenticated, the Court does not find this an

appropriate basis to not consider the records in determining the issues in the Motion for Summary Judgment. However, the Court agrees that these medical and administrative appeal records lack foundation and contain inadmissible hearsay.

Defendants' fifth objection is to Billups's Exhibits 8-9, 11, and 14 on the grounds that they are irrelevant and contain inadmissible hearsay. The Court agrees with Defendants that the appeal records and medical records are irrelevant and contain inadmissible hearsay.

Defendants' sixth objection is to Billups's Exhibit 15 on the grounds that it is irrelevant and contains improper character evidence. The Court agrees that the documents setting forth Billups' successes is not relevant to the issues in this cases. Specifically, the Court notes that the documents do not address Billups's credibility and, even if they did, the Court is not to make credibility determinations in considering a Motion for Summary Judgment.

Defendants' objections are sustained.

*Cruel and Unusual Punishment – Excessive Force*

Billups asserts that he suffered cruel and unusual punishment in violation of the Eighth Amendment as the result of Defendants using excessive force against him. "What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause depends upon the claim at issue . . ." *Hudson v. McMillian*, 503 U.S.. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). "The objective component of an Eighth Amendment claim is . . . contextual and responsive to contemporary standards of decency." *Id*., *internal quotation marks and citations omitted*. The malicious and sadistic use of force to cause harm always violates contemporary standards of decency, regardless of whether or not significant injury is evidenced. *Id*. at 9; *see also Oliver v. Keller*, 289 F.3d 623. 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries). However, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Id*. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical

force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10, *internal quotation marks and citations omitted.*

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.*, *internal quotation marks and citations omitted.* "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." *Id.*

Maintaining discipline in a high level security unit is an important penological interest. *See Whitley v. Albers*, 475 U.S. 321-22 (1986), *citing Bell v. Wolfish*, 441 U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) ("Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to present internal order and discipline and to maintain institutional security."). *Whitley* set forth five factors to consider in evaluating whether an officials' use of force was malicious and sadistic for the purpose of causing harm: (1) the need for application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted, (4) the threat "reasonably perceived" by the officials, and (5) any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321; *Hudson*, 503 U.S. at 7. Furthermore, the Supreme Court has stated that "[n]ot every push or shove violates a prisoner's constitutional rights." *Hudson*, 503 U.S. at 9. Additionally, while a significant injury is not required to make out an excessive force claim the absence of serious injury is relevant to the inquiry as a *de minimis* use of physical force does not violate the Eighth Amendment. *Id.* at 7, 9-10.

California has adopted policies to maintain discipline in prison facilities. Defendants assert that inmates are not allowed to use force or violence against each other and are

- 11 -

1 required to promptly obey verbal orders from staff and, when an alarm is sounded, inmates
2 are supposed to get down on the ground in a prone position. Billups does not dispute this.
3 Additionally, fighting inmates must be separated immediately. Cal. Code of Regs. tit. 15,
4 § 3286 (2008). When inmates engage in violent and disruptive behavior, "prison officials
5 are authorized and indeed required to take appropriate measures to maintain prison order and
6 discipline and protect staff and other prisoners from such violent inmates." *LeMaire v.*
7 *Maass*, 12 F.3d 1444, 1458 (9th Cir. 1993).

The undisputed evidence of this case indicates that Billups and Davis were fighting. Billups has not disputed Defendants' evidence that Billups and Davis did not comply with orders to stop fighting. Further, Defendants used pepper spray and batons on Billups in an attempt to stop the fight. The parties disagree on whether pepper spray or a baton was used first. However, Billups has not presented any evidence that the alarm sounded and verbal orders to stop fighting occurred before Defendants used either the pepper spray or the batons. It is undisputed, therefore, that efforts were made to temper the severity of a forceful response. However, because the evidence of whether pepper spray or batons were used first is disputed, the Court will not place significant weight on this factor.

Billups has not disputed Defendants' evidence that Billups and Davis did not cease fighting even after the use of the pepper spray and batons. Billups has not alleged that Defendants used excessive force against him after Collier physically grabbed Davis and Ramirez physically grabbed Billups.[6] Defendants reasonably perceived that the altercation between Billups and Davis presented a threat to the safety and security of the inmates and the institution. This favor weighs against a finding that Defendants' use of force was malicious and sadistic for the purpose of causing harm.

The undisputed evidence shows that Defendants used a variety of methods in an attempt to stop the fighting (alarm, verbal orders, pepper spray, batons). The undisputed

---

[6]Billups asserts that, after he was restrained, he was still attacked by Davis; however, there is no allegation that Defendants used excessive force against him after he was restrained.

- 12 -

evidence also shows that Billups and Davis did not respond to any of these attempts. When more officers had responded to the incident, Billups and Davis were separated and restrained.[7] The undisputed evidence establishes that appropriate force for the purposes of restoring order was used by Defendants. Further, there is no evidence to support Billups's assertion that Defendants used force against Billups or Davis with the intention of causing harm to either inmate. The factors regarding the need for application of force and its relationship to the amount of force used weigh against a finding that Defendants' use of force was malicious and sadistic for the purpose of causing harm.

The parties dispute the seriousness of injuries suffered from Defendants during the incident. However, Billups has submitted documents that lack foundation and contain inadmissible hearsay. Additionally, Billups does not present any admissible evidence that any serious injury was caused by the conduct of Defendants as opposed to Davis or a pre-condition. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" *Hudson*, 503 U.S. at 7. Although Billups asserts that he did not receive adequate medical care, he admits that he was at the medical station. The Progress Note indicates that Billups did not report a loss of consciousness, did not appear to be in acute distress, and did not demonstrate any active bleeding, respiratory difficulties, nasal swelling, or bone deformities. The Progress Note also indicates that Billups was able to move all of his extremities well, was able to bend and lower himself to the ground past ninety-degrees without assistance, and maintained good balance without wobbling. Additionally, Billups has not presented any evidence to dispute defense expert Dr. Douglas' opinion that Billups did not show any serious injuries in the evaluations,

---

[7]The declarations of Hiller, Ramirez, and Greenly indicate that they are trained to use their force options first before attempting to physically restrain inmates in a fight to ensure that officers remain safe and have enough backup during a volatile and potentially dangerous situation.

that Billups did not show signs of symptoms that would likely be associated with being beaten with a baton to the point of being knocked unconsciousness, and that the injuries suffered by Billups on April 14, 2005, were more consistent with being in a fist fight than being repeatedly hit with Side Handle Batons. This factor weighs against a finding that Defendants' use of force was malicious and sadistic for the purpose of causing harm.

Each of the *Whitley* factors do not favor a determination that the Defendants use of force was malicious and sadistic for the purpose of causing harm. Defendants' use of force was reasonable under the circumstances, progressive to some degree, and done for penological purposes. Summary judgment in favor of Defendants is appropriate.

*Qualified Immunity*

Defendants also assert that they are entitled to summary judgment on the basis of qualified immunity. Government officials are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Liston v. County of Riverside*, 120 F.3d 965, 975 (9th Cir. 1997), citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The defense of qualified immunity allows for errors in judgment and protects "all but the plainly incompetent or those who knowingly violate the law . . . [I]f officers of reasonable competence could disagree on the issue [whether or not a specific action was constitutional], immunity should be recognized." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). Qualified immunity balances the interests of "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, — U.S. —, 129 S.Ct. 808, 172 L.Ed.2d 565, 2009 WL 128768 *6 (2009). The Court must determine "whether, in light of clearly established principles governing the conduct in question, the officer objectively could have believed that his conduct was lawful." *Watkins v. City of Oakland*, 145 F.3d 1087, 1092 (9th Cir. 1998).

When qualified immunity is asserted at the summary judgment stage, the Court would

historically consider "this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001); *see also Billington v. Smith*, 292 F.3d 1177, 1183 (9th Cir. 2002). If not, then "there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201, 121 S.Ct. at 2156. If a constitutional violation is revealed, the "the next, sequential step is to ask whether the right was clearly established." *Id.* A constitutional right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.*, 533 U.S. at 202, 121 S.Ct. at 2156. If a constitutional violation occurred, the issue becomes whether the law officer could have reasonably believed that the officer's conduct was lawful. Generally, this is a mixed question of law and fact requiring a determination regarding whether an objectively reasonable officer would have believed that exigent circumstances existed to justify the force used in light of the information possessed by defendant. *Id.*, 533 U.S. at 205-206, 121 S.Ct. at 2158-2159. However, the United States Supreme Court recently determined that the sequence set forth in *Saucier* is not mandatory and that district courts may "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 129 S.Ct. at 818.

Any genuine issues of material fact concerning the underlying facts of what the officer knew or what the officer did are questions of fact for the jury. *Acosta v. City and County of San Francisco*, 83 F.3d 1143, 1149 (9th Cir. 1996), citing *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1099 (9th Cir. 1995). However, where the essential facts are undisputed, the reasonableness of the officer's actions is properly determined by the court. *Sinaloa Lake Owners Ass'n*, 70 F.3d at 1099. In this case, the essential facts are undisputed.

The Court's determination that Defendants did not violate Billups's constitutional rights is sufficient to establish that Defendants are entitled to qualified immunity. Moreover, given the undisputed facts of this case, a reasonable person in Defendants' positions could have believed that their conduct was lawful. Under either *Saucier* prong, therefore,

- 15 -

Defendants are entitled to qualified immunity.

Accordingly, IT IS ORDERED:

1. Defendants' Motion for Summary Judgment [Doc. # 44] is GRANTED.

2. Judgment is awarded in favor of Defendants Hiller, Greenly, Ramirez, and Collier and against Billups on Billups's excessive force claim.

3. The Clerk of the Court shall enter judgment and shall then close its file in this matter.

DATED this 21st day of May, 2009.

_____
Cindy K. Jorgenson
United States District Judge