IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DERRICK BILLUPS,
    Plaintiff,

vs.

A. RAMIREZ, et al.,
    Defendants.

No. 1:07-CV-00062-CKJ

**ORDER**

Pending before the Court is Plaintiff's Motion for Reconsideration [Doc. #s 53 and 54]. Plaintiff seeks reconsideration of the Court's May 22, 2009, Order ("Order") granting summary judgment in favor of Defendants..

*Jurisdiction of the District Court while Appeal is Pending*

Generally, the filing of a valid notice of appeal divests a district court of jurisdiction to alter, amend or modify the order or judgment that is being challenged in an appeal. *Marresse v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 379, 105 S.Ct. 1327, 1331, 84 L.Ed.2d 274 (1985) ("In general, filing of a notice of appeal confers jurisdiction on the court of appeals and divests the district court of control over those aspects of the case involved in the appeal."); *Pope v. Sav. Bank of Puget Sound*, 850 F.2d 1345, 1347 (9th Cir. 1988). Although a district court may not modify or alter its judgment while the appeal is pending, it may issue orders clarifying a judgment or order. *See Morris v. Morgan*

1  *Stanley & Co.*, 942 F.2d 648, 654-55 (9th Cir. 1991).  Additionally, a district court retains
2  jurisdiction to dispose of timely tolling motions for reconsideration.  *Tripati v. Henman*, 845
3  F.2d 205, 206 (9th Cir. 1988).

4       In this case, the Court finds it appropriate to clarify it Order regarding the factual
5  issues raised by Plaintiff Derrick Billups ("Billups").  Further, Billups is seeking a
6  substantive change of mind by the Court as to legal issues.  *See Tripati*, 845 F.2d at 206, n.
7  1.  This Court's consideration of the legal issues in Billups's Motion for Reconsdiration
8  would prevent duplication of effort by the courts.  *See Tripati*, 845 F.2d at 206.  The Court
9  finds it retains jurisdiction to consider the pending Motion.

10

11 *Motion for Reconsideration*

12      The Court has discretion to reconsider and vacate an order.  *Barber v. Hawaii*, 42 F.3d
13 1185, 1198 (9th Cir. 1994); *United States v. Nutri-cology, Inc.*, 982 F.2d 394, 396 (9th Cir.
14 1992).  "The purpose of a motion for reconsideration is to correct manifest errors of law or
15 fact or to present newly discovered evidence.  *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909
16 (3rd Cir. 1985), *cert. denied,* 476 U.S. 1171 (1986).  A Fed.R.Civ.P. 59(e) motion to amend
17 judgment is appropriate (1) to correct "'manifest errors of law or fact upon which the
18 judgment is based;'" (2) where the movant presents "'newly-discovered or previously
19 unavailable evidence'" (3) "'to prevent manifest injustice'"; or (4) where there has been an
20 "'intervening change in controlling law.'"  *Turner v. Burlington N. Santa Fe R.R. Co.*, 338
21 F.3d 1058, 1063 (9th Cir. 2003).  However, motions for reconsideration are disfavored.  *See*
22 *generally Northwest Acceptance Corp. v. Lynnwood Equipment, Inc.*, 841 F.2d 918, 925-26
23 (9th Cir. 1988).  Indeed, a motion for reconsideration is not to be used to ask a court "to
24 rethink what the court had already thought through – rightly or wrongly."  *Above the Belt,*
25 *Inc. v. Mel Bohanan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va. 1983) (limiting motions for
26 reconsideration to cases where the court has patently misunderstood a party, where the court
27 has made a decision outside the adversarial issues presented to the court, where the court has
28 made an error not of reasoning but of apprehension, or where there has been a controlling or

significant change in the law or facts since the submission of the issue to the court); *see also United States v. Rezzonico*, 32 F.Supp.2d 1112, 1116 (D.Ariz. 1998).

*Factual Findings Made by the Court*

In his motion, Billups points to the Court's statement that "Billups's Statement of Facts indicates that three cans of O.C. Pepper Spray were used and two of the cans were emptied. However, his Ex. D does not establish this fact." Order, p. 2, n. 3. Billups points to where, in the record, his statement is supported. However, the Court was merely pointing out that Billups's Exhibit D did not support that assertion – not that the assertion was incorrect. Indeed, during its discussion of the factual background, the Court stated that Hiller, Ramirez, and Greenly had discharged their O.C. Pepper Spray and, in its legal analysis, the Court stated that the undisputed evidence of this case indicated that Defendants had used pepper spray and batons on Billups in an attempt to stop the fight.

Billups also disputes the Court's statement that "Billups has not alleged that Defendants used excessive force against him after Collier physically grabbed Davis and Ramirez physically grabbed Billups." Order, p. 12. The Court also stated that "Billups asserts that, after he was restrained, he was still attacked by Davis; however, there is no allegation that Defendants used excessive force against him after he was restrained." *Id.*, at n. 6. Billups argues that Defendants Collier and Hiller helped assault Billups by each grabbing one of his arms and holding them while inmate Davis hit and kicked Billups. Billups's declaration in support of this assertion states that "Defendant Hiller and Defendant Collier both grabbed plaintiff and held [plaintiff's] arms while inmate Davis kicked the plaintiff in the mouth area with hard state issued boots." Billups's Ex. 2, p. 2. However, the facts as presented by Billups's declaration (and other evidence) do not support his conclusory assertion that Defendants "helped" assault Billups by holding Billups's arms rather than a conclusion that inmate Davis was able to continue hitting and kicking Billups until Defendants managed to completely separate Billups and inmate Davis. Indeed, the declaration of "Qiyam" L. Pogue, which indicates that he observed the entire incident, does

1    not assert that Defendants held Billups while inmate Davis continued to hit and kick Billups.

2    Billups also asserts that he was not given any care for pain and injuries while outside
3    the medical clinic.  However, Billups has not shown that the adequacy of the medical
4    treatment was relevant.  Indeed, the Court concluded such evidence was not relevant to this
5    case because there was no deliberate indifference to medical treatment claim pending in this
6    case.

7    Billups also asserts the Court erred in stating that the April 14, 2005, medical report
8    did not show any active bleeding.  However, the Court specifically referred to the April 14,
9    2005, Interdisciplinary Progress Note.  That report indicates that, approximately one hour
10   after the incident, "Ø active bleeding noted @ the time of my assessment[.]"  Motion, Ex. E.,
11   Attachment 8.  The Court also referred to Dr. Douglass's medical opinion which referred to
12   Billups's injuries, which consisted of "an abrasion/scratch to his chin and bleeding from his
13   nose[.]"  Order, p. 5.

14   As to these claims, Billups has not presented any newly discovered evidence or any
15   basis for this Court to determine that reconsideration is needed to correct manifest errors of
16   law or fact.  *Zlotnicki*, 779 F.2d at 909; *see also Hallas v. Ameriquest Mortgage Co.*, 406
17   F.Supp.2d 1176 (D.Or. 2005) ( motion for reconsideration is not an appropriate method for
18   an unsuccessful party to "rehash" arguments previously presented).

19

20   *Medical and Prison Administrative Records*

21   Billups asserts that the Court has violated his due process rights by not considering
22   his medical and administrative records as evidence.[1]  Billups appears to argue that such

23

---

[1] The Court notes that Billups did not respond to Defendants' evidentiary objections pending resolution of the Motion for Summary Judgment.  However, Billups was not advised that the Court would consider a response to evidentiary objections.  Additionally, Billups argues that the Court considered such exhibits submitted by Defendants.  However, Billups did not object to the Court's consideration of the exhibits on this basis.  Further, Billups does not acknowledge that Defendants provided declarations authenticating the documents submitted by Defendants.

- 4 -

1  records have been self-authenticated under Fed.R.Evid. 902. However, the Court specifically
2  found that the lack of authentication was not the basis the Court was not considering the
3  evidence. *See* May 22, 2009, Order, pp. 9-10.  Billups also argues that such records are
4  admissible as an exception to the hearsay rules as records of regularly conducted activity.
5  Fed.R.Evid. 803(6).  The Court agrees.  *United States v. Hall*, 419 F.3d 980 (9th Cir. 2005)
6  (medical records); *Wheeler v. Sims*, 951 F.2d 796 (7th Cir. 1992) (prison records).  The Court
7  finds it appropriate to review the medical and prison records to determine if the Court should
8  reconsider its decision. However, documents relating to claims of retaliation or the adequacy
9  of medical treatment are not relevant.

11 *Additional Factual Background*

12      The Court's prior Order summarized Billups's medical records as follows:

13      Billups has submitted medical records which purport to show minimal right knee effusion, minimal effusion at the radio humeral joint (elbow), ordered facial x-rays that were not completed, that Billups's eyes are now photosensitive and Billups now has decreased vision, and medical records that show Billups had a prior serious low back injury before the incident and was receiving treatment at the time of the incident. Defendants object to these exhibits.

Order, p. 5.

An April 27, 2005, Admission Report indicates Billups reported he was bruised all over from the incident with Defendants and that he had suffered from headaches and dizziness since the incident.[2] Billups's Statement of Facts ("SOF"), Ex. 12. The report also indicates that Billups suffered from "tenderness over the back of the neck down to the lower back, and it [hurt] to move his trunk." *Id*. The report also indicated that the reporter did not see any definite bruises and stated an impression of "[f]ictitious loss of consciousness." *Id*.

An August 7, 2008, report of James Carter Thomas, MD, APC, indicates that an MRI of Billups's right knee shows "minimal knee effusion" and an MRI of Billups's right elbow shows "minimal effusion at the radiohumeral joint." SOF, Ex. 5.

---

[2]This report was discussed in the Court's Order.

- 5 -

1	Billups's medical records show that Billups suffered back pain prior to the incident.
2	*See* SOF, Ex. 12.

3	Billups's medical records indicate that Billups consistently reports suffering pain. *See*
4	SOF, Ex. 5, Interdisciplinary Progress Notes (right elbow pain, same as last visit);[3] medical
5	request (elbow and knee pain); SOF, Ex. 6 (trauma from fight);[4] SOF, Ex. 7 (Billups reported
6	to prison officials he suffered pain and muscle spasms in his left eye and that exposure to
7	sunlight hurts his eye; SOF, Ex. 8 (Billups reported knee pain to prison officials).

8	Billups's medical records indicate that he was assessed as photosensitive.  SOF, Ex.
9	7, 12/20/06 Encounter Form:  Eye Injury/Irritation (assessment of photosensitive).   An
10	administrative prison record indicates that 4/24/07 x-rays of Billups's knees were "negative
11	for anything."  SOF, Ex. 8, Appeal Supplemental Page

*Cruel and Unusual Punishment – Excessive Force – Extent of Injury*

In considering whether a material issue of fact was presented as to Billups's claim that he suffered cruel and unusual punishment in violation of the Eighth Amendment as the result of Defendants using excessive force against him, the Court considered the *Whitley* factors in evaluating whether a Defendants' use of force was malicious and sadistic for the purpose of causing harm: (1) the need for application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted, (4) the threat "reasonably perceived" by the officials, and (5) any efforts made to temper the severity of a forceful response.  *Whitley v. Albers*, 475 U.S. 321-22 (1986).  The Court stated:

> The parties dispute the seriousness of injuries suffered from Defendants during the incident. However, Billups has submitted documents that lack foundation and contain inadmissible hearsay. Additionally, Billups does not present any admissible evidence that any serious injury was caused by the conduct of Defendants as opposed to Davis

---

[3]The date of this report is not clear – the document indicates the report occurred on November 18, 2001, but a notation at the top of the page includes the date of October 19, 2008.

[4]The request is dated "7-29-5."

- 6 -

or a pre-condition. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation, 'or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur.'" *Hudson*, 503 U.S. at 7. Although Billups asserts that he did not receive adequate medical care, he admits that he was at the medical station. The Progress Note indicates that Billups did not report a loss of consciousness, did not appear to be in acute distress, and did not demonstrate any active bleeding, respiratory difficulties, nasal swelling, or bone deformities. The Progress Note also indicates that Billups was able to move all of his extremities well, was able to bend and lower himself to the ground past ninety-degrees without assistance, and maintained good balance without wobbling. Additionally, Billups has not presented any evidence to dispute defense expert Dr. Douglas' opinion that Billups did not show any serious injuries in the evaluations, that Billups did not show signs of symptoms that would likely be associated with being beaten with a baton to the point of being knocked unconsciousness, and that the injuries suffered by Billups on April 14, 2005, were more consistent with being in a fist fight than being repeatedly hit with Side Handle Batons. This factor weighs against a finding that Defendants' use of force was malicious and sadistic for the purpose of causing harm.

Order, pp. 13-14. The consideration of Billups's medical and prison records does not alter the Court's conclusion. While the records demonstrate Billups's continued reporting of pain and injuries, Billups has not shown that any serious physical injury was the result of Defendants' conduct, rather than inmate Davis' conduct or a pre-condition. The Court again concludes that this *Whitley* factor weighs against a finding that Defendants' conduct was malicious and sadistic for the purpose of causing harm.

Therefore, while the Court has considered it appropriate to clarify its factual findings and review its prior decision in light of the medical and prison records, the Court has determined that summary judgment in favor of Defendants' was appropriately granted.

Accordingly, IT IS ORDERED Billups's Motion for Reconsideration [Doc. #s 53 and 54] is DENIED.

DATED this 17th day of July, 2009.

Cindy K. Jorgenson
United States District Judge